**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

|                                        |     |                            |
|----------------------------------------|-----|----------------------------|
| ERNESTO MARTINEZ,                      | )   |                            |
| Plaintiff,                             | )   |                            |
|                                        | )   |                            |
| v.                                     | )   | CAUSE NO.: 2:09-CV-62-PRC  |
|                                        | )   |                            |
| MICHAEL ASTRUE, Commissioner of the    | )   |                            |
| Social Security Administration,        | )   |                            |
| Defendant.                             | )   |                            |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff, Ernesto Martinez,

on March 16, 2009, and Plaintiff's Motion for Summary Judgment [DE 15], filed on June 29, 2009.

On June 23, 2009, Plaintiff filed a Memorandum in Support of his Motion for Summary Judgment.

Plaintiff requests that the Court reverse the decision of the ALJ, denying Plaintiff's claim for

Disability Insurance Benefits (DIB), and remand to the Commissioner for an award of benefits, or,

alternatively, remand this matter for further proceedings. On October 23, 2009, the Commissioner

filed a Memorandum in Support of the Commissioner's Decision, to which the Plaintiff filed a reply

brief on November 10, 2009. For the following reasons, the Court remands this matter for further

proceedings consistent with this Opinion and Order.

## PROCEDURAL BACKGROUND

On August 11, 2006, Plaintiff filed an application for DIB, alleging a disability onset date

of May 5, 2005. Plaintiff's claim was initially denied on September 12, 2006, and upon

reconsideration on or about November 20, 2006. On December 8, 2006, Plaintiff filed a timely

request for hearing.

A hearing was held on June 3, 2008, before Administrative Law Judge ("ALJ") Denise McDuffy Martin, in Gary, Indiana, at which Plaintiff, his attorney Tom Scully, Medical Expert Dr. William Caudill, III, and Vocational Expert Lee Ann Elscare appeared. On September 15, 2008, the ALJ issued an unfavorable decision. Plaintiff filed a Request for Review and the Appeals Council denied this request on January 16, 2009, making the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A.  Plaintiff's Background

Plaintiff was forty-four years old at the time of the ALJ's September 15, 2008 decision. Plaintiff has a high school education and previously worked as a bus driver, truck driver, and construction laborer.

### B.  Medical Evidence

On May 24, 2005, Plaintiff underwent an x-ray of his lumbar spine, which showed that the L5-S1 level had moderate to marked narrowing and dessication, a mild bulging disc, and indications of spondylolysis with no spondylolisthesis. An x-ray of Plaintiff's right knee, taken the same day, showed moderate degenerative arthritic changes and slight joint space narrowing.

Plaintiff saw Dr. Marc Levin, a neurosurgeon, in July 2005 and complained of experiencing

lower back pain that radiated into both of his legs and feet, as well as numbness and tingling in his feet and toes, and re-aggravation of a previous injury to his right knee. Plaintiff reported that he was then taking Hydrocodone (a narcotic pain medication) and Mobic (a non-steroid anti-inflammatory). Dr. Levin observed that Plaintiff had diminished reflexes and a decreased range of motion in his lumbar spine, but a negative straight leg raising test. Dr. Levin opined that Plaintiff's May 24, 2005 x-ray showed degenerative disc disease at the L5 level of his lumbar spine, but no herniated disc. He diagnosed Plaintiff with radiculopathy and lower back pain and recommended physical therapy. In August 2005, Plaintiff reported that physical therapy made his symptoms worse. Because physical therapy did not alleviate Plaintiff's symptoms, Dr. Levin recommended a course of lumbosacral steroid injections. One month later, Plaintiff reported that the injections produced no change in his symptoms.

In October 2005, Dr. Richard Berger diagnosed Plaintiff with right knee osteoarthritis. Dr. Gilberto Zavala later performed a pre-operative examination and noted that Plaintiff had mild tenderness and decreased range of motion in his right knee, but displayed a normal effect and had normal neurological readings and reflexes. Plaintiff denied having any other complaints.

On November 22, 2005, Plaintiff underwent a minimally invasive total right knee replacement surgery. Three weeks later, Dr. Berger noted that Plaintiff was still walking with crutches and that he had some typical post-operative fluid on his right knee. He refilled Plaintiff's pain medications and prescribed physical therapy. One month later, Plaintiff reported that he was walking without any assistive device, had no complaints, and that his post-operative physical therapy seemed to be progressing a bit slowly. Dr. Berger noted that x-rays showed that Plaintiff's right knee prosthesis was in good position with no evidence of wear. One month later, Plaintiff

reported to Dr. Berger that he was doing very well, his right knee pain was nearly gone, and that he required neither a cane nor pain medication.

Plaintiff continued attending post-operative physical therapy through March 2006 and was discharged that same month from physical therapy because he had met all of the goals his therapist set for him. Plaintiff rated his knee pain level at a two on a ten-point scale. Plaintiff's physical therapist, Dr. Chittaranjan Patel, M.D., reported that he could perform all of his activities of daily living and that he had a normal range of motion in his lower extremities, very good strength, and a normal gait.

On April 5, 2006, Plaintiff reported to Dr. Patel that he had not received any sustained benefits from physical therapy for his back or from two lumbar epidural steroid injections. Upon examining Plaintiff, Dr. Patel noted that Plaintiff was 5' 10" and weighed 236 pounds, and diagnosed L5-S1 degenerative disk disease. He cleared Plaintiff for spinal fusion surgery with Dr. Levin and Dr. Levin reviewed Dr. Patel's notes on April 20, 2006, and included them in his preoperative report.

On or about April 21, 2006, Dr. Levin performed an anterior lumbar interbody fusion surgery of the vertebrae at the L5-S1 level on Plaintiff. Plaintiff was discharged the next day and prescribed Vicodin ES, as needed every six hours, and Dicloxacillin, an antibiotic used to prevent staph infections. Dr. Levin's post-operative diagnosis remained degenerative L5 disc disease. At discharge, Plaintiff reported that he was doing very well and had no back or leg pain.

In April 2006, Plaintiff underwent x-rays that showed spondylolysis with minimal anterolisthesis at the L5-S1 level of Plaintiff's spine and no evidence of post-operative complications. X-rays taken one month later showed that the disc space at the L5-S1 level of

Plaintiff's spine was adequately maintained, and minimal anterolisthesis was again noted. On May 8, 2006, Plaintiff saw Dr. Levin and complained of pain and soreness in his lower back, left lower quadrant, and left upper leg. Dr. Levin noted some tenderness in Plaintiff's left lower quadrant and a questionable positive straight leg raising on the left. Dr. Levin prescribed Medrol Dosepak and deferred physical therapy. On May 25, 2009, Plaintiff complained to Dr. Levin of some soreness along his lower back and tingling and numbness in his left leg and foot, and he reported that he had some of these symptoms before his surgery. Dr. Levin noted a diminished range of motion in Plaintiff's lumbosacral spine, but a negative straight leg raising test. Dr. Levin referred Plaintiff to physical therapy, continued his pain medication, and prescribed Neurontin.

At a follow-up evaluation one month later, Plaintiff complained to Dr. Levin of back spasms at night and numbness in his lower extremities and indicated that he had not noticed any improvement in these symptoms since his surgery. Plaintiff indicated that these symptoms decreased during the physical therapy sessions, but returned afterwards. Dr. Levin noted that Plaintiff had a negative straight leg raising test and walked without difficulty. Dr. Levin substituted the Robaxin he prescribed for another muscle relaxant (Flexeril), increased the dosage of Plaintiff's Nuerontin, and referred him to additional physical therapy.

In July 2006, Plaintiff complained to Dr. Levin of continued lower back pain and numbness into his left leg and foot. He also reported that standing or sitting for more than fifteen minutes increased his back pain, but Flexeril helped to relieve his symptoms. Dr. Levin ultimately referred Plaintiff to another four weeks of physical therapy.

At a follow-up appointment in August 2006, Plaintiff complained of continued back pain, numbness and tingling in his left leg, and worsening symptoms after water-based therapy. Dr. Levin

observed that Plaintiff had diminished range of motion in his lumbosacral spine, but intact motor strength and negative straight leg raising tests. Dr. Levin recommended additional x-rays and MRIs. On September 5, 2006, Dr. Levin opined that Plaintiff could probably do sedentary work if it is available.

On September 11, 2006, Dr. Levin reported that he had approved Plaintiff's return to work at a sedentary position. He opined that Plaintiff could perform sedentary work with a change in position every twenty minutes. However, with regard to activity/restriction levels listed in his Patient Status Form, Dr. Levin recommended that Plaintiff be limited to a weight range of five pounds, occasionally. Dr Levin also noted Plaintiff's continued complaints of numbness in his leg and back pain.

On September 12, 2006, non-examining and non-treating physician, Dr. J. V. Cocoran, M.D., prepared a physical residual functional capacity assessment at the Social Security Administration's request and opined that Plaintiff could lift twenty pounds no more than occasionally and ten pounds no more than frequently, sit for about six hours in an eight hour workday, stand or walk for about six hours in an eight hour workday, and no more than occasionally perform postural activities.

On October 30, 2006, Dr. Levin re-evaluated Plaintiff and reported that Plaintiff stated that he could not do anything, but Dr. Levin noted that Plaintiff walked without difficulty. Dr. Levin also noted that x-rays and an MRI of Plaintiff's lumbar spine were unremarkable. Dr. Levin further opined that Plaintiff could return to work "in the sedentary light duty fashion." R. at 438. At a November 27, 2006 follow-up appointment, Plaintiff complained of greater difficulty walking and lower back pain that radiated into his legs. An EMG report revealed that Plaintiff had radiculopathy at S1, but an MRI noted unremarkable nerve root impingement. Based on these results, Dr. Levin

recommended lumbar epidural injections. In his treatment notes, Dr. Levin opined that Plaintiff could perform "very sedentary duty." R. at 437. In a status form completed on the same day, Dr. Levin opined that Plaintiff could perform sedentary work and limited him to a weight range of ten pounds occasionally.

On November 28, 2006, Dr. J. Sands reviewed Plaintiff's medical file and affirmed Dr. Cocoran's decision as written.

On January 25, 2007, Plaintiff saw Dr. Levin and complained of left knee pain. Dr. Levin opined that Plaintiff complained of left knee pain and recommended an MRI of his left knee.

In February 2007, Health Motivation Center performed a work performance evaluation and opined that, at a minimum, Plaintiff could perform work at the medium exertional level. In the evaluation, the examiner opined that Plaintiff could perform medium work and exhibited self limiting behavior because of pain. Plaintiff reported a pain level of four on a scale of one to ten and that prolonged walking, sitting, standing, bending, stooping, lifting, and carrying aggravated his pain.

On May 15, 2007, Dr. Preston Wolin evaluated Plaintiff's complaints of increasing pain and swelling in his left knee since January 2000 and noted that Plaintiff's medications consisted of Vicodin, Plaintiff denied depression, anxiety, and memory loss, and that Plaintiff was 5' 11", weighed 243 pounds, and had a body mass index (BMI) of 34. Dr. Wolin further noted Plaintiff's complaints of left knee pain and back pain.

Plaintiff underwent surgery on his left knee in June 2007. At a post-operative appointment, Plaintiff had a normal range of motion in his left knee and reported that he felt much better. Dr. Wolin referred Plaintiff to physical therapy.

In September 2007, Plaintiff saw Dr. Wolin and reported that his knee pain returned. Dr. Wolin recommended an MRI.

In October 2007, Plaintiff reported that his left knee continued to be unstable with minimal swelling and snapping and increased pain with walking. Dr. Wolin informed Plaintiff that his treatment options were limited until he completed rehabilitation on his left knee. Plaintiff, however, reported persistent complaints of lower back pain and Dr. Wolin recommended a doctor to Plaintiff for treatment of his back symptoms.

On December 19, 2007, Dr. Wolin saw Plaintiff and noted that Plaintiff reported that he had not attended physical therapy because of his continued back symptoms, that his left knee symptoms had worsened, and that he was awaiting approval through Dr. Levin to get an MRI on his back. On March 11, 2008, Plaintiff reported to Dr. Wolin that a cortisone injection did not relieve his symptoms and that he had been attending work hardening for two weeks with pain in his left knee. Dr. Wolin continued Plaintiff in the work hardening program.

On May 1, 2008, Dr. Wolin performed a second arthroscopy and chrondroplasty and removed some loose bodies from Plaintiff's left knee. On May 14, 2008, Plaintiff saw Dr. Wolin for a post-surgical follow-up appointment, at which time he reported that he was doing well, that he continued to progress at physical therapy, and that Vicodin controlled his post-surgical pain. Dr. Wolin noted that Plaintiff had a mild limp and removed the sutures on Plaintiff's left knee without complication.

On May 20, 2008, Doug Bradley PT, CSCS prepared a functional capacity evaluation and opined that Plaintiff could perform work at the medium exertional level, but that he should avoid any work activities involving climbing, sit for short periods of time after standing for more than

forty-five minutes secondary to an increase in his lower back and knee pain, no more than occasionally lift up to forty pounds from a height no lower than knee level, and no more than occasionally carry up to thirty pounds for short to moderate distances.

## C. The June 3, 2008 Hearing

### 1. *Plaintiff's Testimony*

At the June 3, 2008 Hearing, Plaintiff testified that after undergoing back surgery, he did not experience improvement in his pain. Plaintiff attended several different physical therapy providers, but therapy made his pain worse. Plaintiff received epidural shots that failed to relieve his pain, underwent total right knee replacement, and was told that he needed total left knee replacement as well. Plaintiff testified that his back and knee pain was an eight on a scale of one to ten. His pain was akin to stabbing and shooting pain and he had numbness on the left side of his body. Plaintiff's weight increased from 190 pounds to over 250 pounds and was told by his doctors that his weight gain would make his back pain worse.

Plaintiff further testified that he had to lay down three times per day for twenty minute periods. He had trouble getting out of bed in the morning and needed his wife's help to do so. He was unable to walk more than one block, because of his back and knee pain. Further, he could sit for fifteen to twenty minutes before experiencing shooting back pain and leg numbness. He could stand for twenty minutes, but needed to constantly move so that he could get comfortable and reduce pain. He also alleged that he could only lift less than ten pounds due to his back pain.

Plaintiff testified that he took Vicodin and Lyrica for his pain, but this medication caused him to be tired and sleepy. As to his daily activities, Plaintiff testified that he woke up around six in the morning, took a shower, got his children ready for school, took them to school, washed dishes,

and did light cleaning around the house.  He drove his children three blocks to their school, but that was the farthest he ever drove.

*2. Testimony of the Medical Expert*

Dr. William Caudill, III ("the Medical Expert") testified that Plaintiff had degenerative arthritis of the right knee, status-post total right knee replacement, degenerative arthritis of the left knee and spine, and status-post anterior inner body fusion of L5-S1.  The Medical Expert ("ME") opined that Plaintiff's impairments did not meet or equal a Listing.  The ME further opined that Plaintiff could frequently lift less than ten pounds, stand and or walk at least two hours in an eight hour day, "sit probably less than about six hours in an eight hour work day," and occasionally climb, balance, stoop, crouch, but never kneel or crawl.  R. at 51.

The ME testified that Plaintiff's allegations of the severity of his pain were credible and that a person with severe knee pain as Plaintiff alleged would have difficulty walking a block.  The ME further testified that a person with severe pain could be affected as to his ability to concentrate and medications affect everyone differently.  The ME also testified that people with pain typically are not good sleepers and this can affect them during the day.

*3. Testimony of the Vocational Expert*

Lee Ann Elscare testified as the vocational expert ("VE") at the Hearing.  The ALJ posed a hypothetical to the VE which required her to consider an individual with claimant's age, education and work experience who would be limited to sedentary work; no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs with occasional balancing, stooping and crouching, with no kneeling or crawling, and pushing and pulling limited in the lower extremities to occasional.  The VE testified that such an individual would be able to perform positions as order

clerk, account clerk, and telephone clerk.

Plaintiff's attorney then asked if the need to lay down two times per day for twenty minutes would change the cited jobs, and the VE testified that it would preclude all competitive employment. Plaintiff's attorney then asked whether an interruption in attention span at least every half hour for up to ten minutes would affect the cited jobs, and the VE testified that it would preclude all competitive employment.

The VE testified that the positions could be performed with a sit/stand option but the numbers of jobs would be reduced by about half. The VE testified that missing more than one day per month of work would preclude all competitive employment. The VE testified that if a person was off task over 15% of the day, it would also preclude all competitive employment.

### D. ALJ's Decision

In the ALJ's September 15, 2008 decision, the ALJ determined that Plaintiff had the following severe impairments: lumbar disorder, right knee disorder, and left knee disorder. The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work and could occasionally balance, stoop, crouch and climb ramps and stairs. Further, Plaintiff could not kneel, crawl or climb ladders, ropes or scaffolds, but could occasionally push and/or pull with his lower extremities.

After reviewing Plaintiff's testimony, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with his RFC assessment and Plaintiff's testimony was not entirely

credible in light of his medical history and reports of the treating and examining physicians.

The ALJ noted that the pain and degree of incapacity alleged by Plaintiff was inconsistent with the medical evidence of record. The ALJ noted that treatment records support finding that Plaintiff's back and knee disorders improved with treatment and that following surgery, Plaintiff had decreased pain and improved range of motion of the lumbar spine and both knees.

Relying in part on the opinions of Dr. Caudill[1] and Dr. Levin, the ALJ held that Plaintiff could not perform his past relevant work, but could perform jobs as an order clerk, account clerk, and telephone clerk. Accordingly, the ALJ denied Plaintiff's claim of DIB.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment

---

[1] In the ALJ's opinion, she mistakenly identifies Dr. Caudill as "Dr. Biehl."

for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).


**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3; (3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-

(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ committed reversible error by: (1) making a deficient credibility determination with regard to Plaintiff's testimony, which did not comply with SSR 96-7p; (2) providing a legally insufficient RFC finding under SSR 96-8p and improperly failing to analyze the impact of Plaintiff's obesity alone or in combination with Plaintiff's other impairments, in violation of SSR 02-1p; and (3) posing a deficient hypothetical to the VE. Further, Plaintiff requests that (4) the Court reverse these proceedings and award benefits to Plaintiff, or, alternatively, remand for further proceedings.

### A. ALJ's Credibility Determination of Plaintiff's Testimony

Plaintiff contends that the ALJ improperly rejected his testimony to the extent that it was inconsistent with the ALJ's RFC assessment, the ALJ solely relied upon the lack of objective evidence to corroborate Plaintiff's allegations of sitting and standing limitations, failed to evaluate Plaintiff's credibility in light of the factors in SSR 96-7p, failed to analyze all the medications

Plaintiff took, and failed to consider Plaintiff's allegations of fatigue and concentration issues.

In making a credibility determination, SSR 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence; the claimant's statements about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence. *See* SSR 96-7p. If an allegation of pain is not supported by the medical evidence and the claimant states that the inability to work is due to significant pain, the ALJ must obtain detailed descriptions of claimant's daily activities by making specific inquiries about the effects of the pain. *See Zurawski*, 245 F.3d at 887.

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find that a disability exists each time a claimant states that he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, SSR 96-7p provides that a claimant's statements regarding the intensity or persistence of her symptoms "may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)).

In addition, factors to be considered by an ALJ evaluating a claimant's complaint of pain include:

(i)     The individual's daily activities;
(ii)    The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(v)    Treatment, other than medication, the individual received or has received for relief of pain or other symptoms;

(vi)    Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(vii)    Other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); SSR 96-7p at *3. In making a credibility determination, Social Security Ruling 96-7p ("SSR 96-7p") states that the ALJ must consider the record as a whole, including objective medical evidence; the claimant's statement about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence. *See* SSR 96-7p.

The Ruling further provides that the "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *see also Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). It is not sufficient for the ALJ to articulate a credibility finding with a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7p.

An ALJ is not required to give full credit to every statement of pain or to find a disability every time a claimant states that he or she is unable to work. *See Rucker*, 92 F.3d at 496. However, SSR 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6; *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) (explaining that

an ALJ may not discredit a claimant's allegations of pain merely because those allegations exceed the objective medical evidence).

"[T]he adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p. As the Seventh Circuit has stated, "[B]ecause hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (internal quotations and citations omitted); *see also Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying"). Generally, an ALJ's credibility determination will not be overturned unless it was "patently wrong." *Prochaska*, 454 F.3d at 738; *see also Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). However, when "credibility determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, appellate courts have greater freedom to review the ALJ's decision." *Palmer v. Barnhart*, 40 F. App'x. 278, 283 (7th Cir. 2002). Finally, even if there is sufficient evidence in the record to support the ALJ's credibility determination, the ALJ must present "specific reasons" for his or her finding, and not simply recite the factors listed in the regulations. SSR 96-7p.

As a preliminary matter, Plaintiff's argument that the ALJ in a conclusory manner rejected Plaintiff's testimony because it was inconsistent with the RFC assessment is not supported by the record. Rather, the ALJ's decision supports that the ALJ analyzed plaintiff's testimony and the medical evidence of record in making a specific finding on credibility.

Next, Plaintiff argues that the ALJ relied on the lack of objective evidence in support of her

finding that Plaintiff was not credible. In particular, Plaintiff argues that the ALJ relied on the lack of objective evidence supporting Plaintiff's alleged limitations in his ability to stand and sit because of his pain, the ALJ failed to evaluate the factors enumerated in SSR 96-7p, failed to analyze Plaintiff's daily activities, failed to analyze all of Plaintiff's medication, failed to consider that Plaintiff's fatigue may have resulted from his pain, failed to specifically address his need to lay down three times per day for twenty minute periods, and failed to properly analyze his alleged concentrations problems.

First, regarding Plaintiff's argument that the ALJ failed to analyze all of his medications, the ALJ noted in her decision that Plaintiff testified that he took Vicodin and this left him feeling sleepy and tired. However, the ALJ found that treatment notes described no significant side effects. At the June 3, 2008 Hearing, Plaintiff testified that at the time of the hearing, he was taking Vicodin and Lyrica, and that these medications made him tired and sleepy. Accordingly, the ALJ's decision adequately accounted for the medications that Plaintiff was taking at the time of the hearing. While the record supports that at various times Plaintiff was prescribed and took various other medications, which were not mentioned in the ALJ's decision, an ALJ need not mention every medication documented in the record. *See Foster v. Barnhart*, No. 1:05-cv-0325-DFH-TAB, 2006 WL 3206273, at *12 (S.D. Ind. May 31, 2006) (citing *Schmidt*, 395 F.3d at 744 (providing that "an ALJ is not required to provide a complete written evaluation of every piece [of] evidence in the record, as long as his decision demonstrates that he has considered all of the relevant evidence")). While a claimant's use of medications factors into a credibility finding, *see* 20 C.F.R. § 416.929(c)(3)(iv); SSR 96-7P, 1996 WL 374186, at *3, a claimant's medication is only one of several factors to consider in the determination of whether pain is disabling, *see* 96-7P, 1996 WL 374186, at *3

(providing that an ALJ's credibility finding as to an individual's statements should be based on the entire case record, including the objective medical evidence, daily activities, characteristics of the symptoms, aggravating factors, medications, and treatments).  Accordingly, an ALJ's failure to consider some of Plaintiff's medications does not *per se* require reversal and remand.

Nonetheless, Plaintiff argues that the ALJ's credibility finding is deficient because the ALJ relied on a lack of objective evidence in the record to support Plaintiff's alleged limitations. Particularly, Plaintiff argues that the ALJ failed to analyze, in addition to a lack of objective medical evidence, the factors enumerated in SSR 96-7p, including Plaintiff's activities of daily living.  The Commissioner concedes that the ALJ did not specifically consider Plaintiff's activities of daily living, but argues that the ALJ did consider Plaintiff's testimony that Plaintiff needed to lie down three times per day for twenty minutes at a time and needed help to get out of bed.  However, aside from mentioning this portion of the Plaintiff's testimony, the ALJ failed to specifically discuss these activities or analyze them in relation to his credibility.

Further, regarding Plaintiff's claim of fatigue, concentration problems, and need to lie down, which Plaintiff alleges in his supporting briefs were side effects of his medication,[2] the alleged fatigue and concentration were addressed and dismissed by the ALJ because no treatment notes described impaired concentration or such side effects from Plaintiff's Vicodin.  Several concerns arise from the ALJ's analysis of these alleged impairments.  First, the ALJ's failure to address Plaintiff's alleged need to lie down during the day requires remand because, if accepted, this

---

[2] Contrary to the Plaintiff's assertions in his supporting briefs, at the June 3, 2008 Hearing, Plaintiff did not testify that the need to lie down was a result of his medication.

Further, although Plaintiff argues that the ME's testimony corroborates his need to lay down three times per day, the Court notes that the ME testified that Plaintiff's medication *can* affect people with pain during the day.  The ME's general statement does not support the Plaintiff's alleged need to lie down.

testimony would appear to preclude a full range of sedentary work, which the ALJ opined that Plaintiff could perform as part of her RFC assessment. *See McQuestion v. Astrue*, 629 F. Supp. 2d 887, 898 (E.D. Wis. 2009) (remanding where the ALJ failed to consider Plaintiff's testimony that he needed to lie down during the day in assessing the plaintiff's credibility).

Further, although the ALJ did evaluate Plaintiff's claims of fatigue and concentration problems, he discredited Plaintiff's testimony regarding these impairments on the basis that the treatment notes failed to describe impaired concentration and did not note significant side effects. The ALJ specifically provided that "the objective clinical and laboratory data does not support a finding that the claimant is as restricted as has been alleged." R. at 25. While an ALJ may consider the lack of objective evidence in rejecting a Plaintiff's subjective complaints, *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009), an ALJ may not discredit a Plaintiff's testimony about his pain or limitations *solely* because there is no objective medical evidence supporting it. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Here, the ALJ's finding that Plaintiff's limitations were not as restricted as he alleged was based solely on the lack of objective evidence supporting his claims. As noted in this Opinion and Order, the ALJ mentioned Plaintiff's daily activities, need to lie down, and need for assistance to get out of bed, but she failed to "connect the dots" between this evidence and Plaintiff's credibility determination by, for example, explaining whether Plaintiff's daily activities or need to lie down were consistent or inconsistent with his claimed pain and limitations. *Id.* Therefore, the ALJ failed to comply with SSR 96-7p and the Court remands this matter for further consideration of Plaintiff's credibility.

### B. ALJ's RFC Finding

Plaintiff next argues that the ALJ's RFC assessment was deficient because the ALJ failed

to explain why she rejected Plaintiff's allegations regarding his inability to sit for prolonged periods of time and failed to address the ME's favorable testimony that Plaintiff could sit for less than six hours in an eight hour work day.

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at Steps Four and Five of the sequential evaluation process. SSR 96-8p. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870.

At the June 3, 2008 Hearing, Plaintiff testified that because of his pain, he could only sit continuously for fifteen to twenty minutes and stand for approximately the same period of time. In arriving at her RFC assessment, however, the ALJ did not include the sitting limitation in her RFC and failed to explain why it was excluded. Further, Plaintiff alleges that the ALJ failed to address why she disregarded the ME's favorable testimony that Plaintiff had "significant medical problems." R. at 49. The Court notes, however, that while the ME did testify that Plaintiff had "significant medical problems," he then provided that he did not think that any of the problems fulfilled a listing requirement. Therefore, contrary to the Plaintiff's arguments, the ME's testimony did not precisely support the Plaintiff's testimony.

The Commissioner argues that the ALJ properly considered Plaintiff's testimony regarding his alleged sitting limitations and relied on evidence showing that Plaintiff's back and neck pain improved with surgery and treatment, as well as other medical evidence showing improvement.

Further, the Commissioner argues that the ALJ considered functional capacity evaluations and medical opinions that opined as to far less restrictive limitations than those that Plaintiff testified to, including the opinions of state physicians, the ME, and Dr. Levin. As Plaintiff argues, contrary to the Commissioner's assertion, the ALJ specifically found that the ME's opinion was more persuasive than the opinions of the state physicians and instead relied on the ME's and Dr. Levin's opinions.

However, the medical evidence that the ALJ relied upon does not support Plaintiff's alleged sitting limitation. As the Commissioner correctly points out, the opinions that the ALJ relied upon did not include limitations as severe as the sitting limitation that Plaintiff alleged. Accordingly, the ALJ's failure to include this limitation in his RFC assessment, solely based on Plaintiff's testimony, does not appear to require remand. *See Chrisman v. Astrue*, 487 F. Supp. 2d 992, 1001 (N.D. Ill. 2007) (finding that the ALJ's RFC assessment was supported by substantial evidence where the plaintiff's alleged inability to stand was not supported by the objective medical evidence).

Nonetheless, the ALJ failed to take the ME's testimony regarding Plaintiff's sitting limitations into account in the RFC assessment. Plaintiff argues that the ALJ adopted the ME's opinion in formulating her RFC assessment and was required to include the ME's assessed sitting limitation in her RFC assessment and that, if included, this limitation would preclude him from performing sedentary work and would limit him to less than full time work and warrant a finding of disability.

At the June 3, 2008 Hearing, the ME testified as to Plaintiff's work related restrictions and provided that Plaintiff could "[s]it probably less than about six hours in an eight hour work day." R. at 51. Pursuant to SSR 83-10, sedentary work requires walking and standing on an occasional

basis. Under SSR 83-10, occasional sitting should "generally total approximately 6 hours of an 8-hour workday." SSR 83-10. Accordingly, if Plaintiff is able to sit less than six hours, he would likely be precluded from performing sedentary work, contrary to the ALJ's RFC assessment. However, the ALJ did not address why she rejected this portion of the ME's testimony.

The Commissioner argues that the ME's testimony that Plaintiff could sit "probably" less than six hours is not a definitive opinion, the ALJ did not adopt the ME's opinion in her decision, and she was not required to rely entirely on a particular physician's opinion. In the ALJ's decision, she found that the ME's opinion was more persuasive than the opinions of the state physicians and the ME had the opportunity to review additional medical records and participated in the hearing. The ALJ also noted that the ME opined that Plaintiff could "sit for *less than* six hours out of an eight-hour workday. . . ." R. at 25 (emphasis added). Nonetheless, the ALJ failed to explain why she disregarded this portion of the ME's testimony.

Plaintiff argues that the ALJ selectively considered only portions of the ME's testimony that supported her decision. An ALJ is not required to address every piece of testimony and evidence. *Gilkey v. Barnhart*, 417 F. Supp. 2d 949, 963 (N.D. Ill. 2006). "However, an ALJ may not select and discuss only that evidence which favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the reviewing court to trace the path of his reasoning." *Id.*

The ALJ here failed to build a logical bridge between the evidence and her RFC finding. Although the RFC finding is the responsibility of the ALJ, *Martinez v. Barnhart*, No. 02 C 2354, 2003 WL 22764594, at *7 (N.D. Ill. Nov. 19, 2003), and the ALJ is not required to rely entirely on a particular physician's opinion, *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007), the ALJ here

must still articulate why she rejected a portion of the ME's testimony that is favorable to the Plaintiff. *See Greenwood v. Barnhart*, 433 F. Supp. 2d 915, 927 (N.D. Ill. 2006) (providing that "even if the ALJ chose not to follow the ME's opinion, he would have to explain why he was rejecting it"); *Gilkey*, 417 F. Supp. 2d at 963-64 (remanding where the ALJ failed to discuss portions of the ME's testimony that were favorable to the Plaintiff). Here, the ALJ failed to address why she declined to adopt the ME's limitation that Plaintiff could probably sit for less than six hours. Although the Commissioner is correct in asserting that the ME's opinion is not a definitive statement, the ALJ failed to explain whether this was a basis for rejecting the limitation.

Moreover, the ALJ noted that Dr. Levin's opinion generally supported the ME's opinion and that Dr. Levin's September 2006 and November 2006 progress notes indicated that Plaintiff was capable of performing work at the sedentary exertional level. Although Dr. Levin's September 2006 progress note indicates that Plaintiff could perform sedentary work, his Patient Status Form limited Plaintiff to sedentary work, but with a weight range of five pounds occasionally. Pursuant to 20 C.F.R. § 416.967(a) and 20 C.F.R. § 404.1567(a), sedentary work "involves lifting no more than *10 pounds* at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a) (emphasis added). Here, Dr. Levin's five pound limitation is inconsistent with the requirements of sedentary work. Yet, the ALJ failed to address and resolve the inconsistency between this finding and the ME's opinion and the RFC assessment. In performing an RFC assessment, an ALJ must explain how she resolved material inconsistencies in the record and reasons for rejecting medical opinions conflicting with the RFC determination. *Brown v. Barnhart*, 298 F. Supp. 2d 773, 798 (E.D. Wis. 2004). The ALJ failed to do so here and

SSR 96-8p compels a remand for clarification.[3] *Id.* at 799.

Accordingly, the Court finds that the ALJ failed to build a logical bridge between the evidence and her RFC assessment, requiring remand on this matter for further consideration of Plaintiff's RFC.

Plaintiff also argues that the ALJ erred in failing to consider the impact of his obesity alone or in combination with his other impairments. The Commissioner argues that although the ALJ did not specifically discuss Plaintiff's obesity, she cited medical opinions that contained information regarding Plaintiff's obesity and, thus, adequately accounted for it in her decision. Plaintiff argues that the ALJ did not adopt the functional capacity opinions of the medical opinions that the ALJ cites and cannot rely on those opinions to account for Plaintiff's obesity.

Social Security Ruling 02-1p requires an ALJ to consider obesity as an impairment and the exacerbating effects of a claimant's obesity on his other conditions, even if the obesity is not itself a severe impairment, when arriving at the RFC assessment. *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Here, multiple references to Plaintiff's weight are contained in the record,[4] including his testimony at the June 3, 2008 Hearing regarding his weight, and this should have put the ALJ on notice regarding Plaintiff's obesity. *See id.*

Nonetheless, the ALJ's failure to explicitly address Plaintiff's obesity was harmless error.

---

[3] Although Dr. Levin's Patient Status Form completed on November 27, 2006, limits Plaintiff to a weight range of ten pounds, the ALJ also failed to resolve the inconsistency between this assessment and the September 2006 assessment.

[4] In particular, Dr. Levin reported, based on Dr. Patel's examination of Plaintiff on April 5, 2006, that Plaintiff was 5' 10" and weighed 236 pounds, R. at 194-95;a February 2007 report notes that Plaintiff was 5' 10" and weighed 246 pounds, R. at 465; and Dr. Wolin noted in his May 15, 2007 evaluation that Plaintiff was 5' 11" and weighed 243 pounds, with a body mass index (BMI) of 34, R. at 511.

*Ruiz v. Barnhart*, 518 F. Supp. 2d 1007, 1023 (N.D. Ill. 2006). "No physician ever suggested, either implicitly or explicitly, that [Plaintiff's] obesity was exacerbating [his] physical impairments." *Id.* Further, at the hearing, the ME testified that he reviewed the record and was present throughout the proceedings and, yet, did not indicate that any limitations existed as to Plaintiff's obesity. Plaintiff does not articulate how obesity exacerbated his underlying conditions, other than contending that obesity "can cause" limitations in standing and sitting and "could have" exacerbated his back and bilateral knee impairments. Pl.'s Br. in Support of Summ. J. 20. The ALJ's opinion cites portions of the record that included notations regarding Plaintiff's weight and BMI. "While there is no evidence that the ALJ adopted any limitations proposed by doctors who were aware of [Plaintiff's] obesity, as in *Skarbek*, the ALJ did consider the opinions of many doctors, and these doctors did not raise obesity as a major concern." *Vanhoozer v. Astrue*, No. 1:07-cv-01622-DFH-TAB, 2008 WL 5070474, at *9 (S.D. Ind. Nov. 26, 2008). Accordingly, the ALJ's failure to explicitly address Plaintiff's obesity in her decision is harmless and remand is not required on this ground. *Id.*

### C. The ALJ's Hypothetical Posed to the VE

Plaintiff argues that the ALJ posed an incomplete hypothetical to the VE by failing to include a limitation of sitting for less than six hours in an eight hour day.

The hypothetical that an ALJ poses to a VE must ordinarily include all limitations supported by the medical evidence of record. *Patty v. Barnhart*, 189 F. App'x 517, 521 (7th Cir. 2006). The hypothetical, though, need not include all of Plaintiff's alleged impairments. *Id.* An ALJ may rely on VE testimony, even if it is in response to an incomplete hypothetical "when the record supports the conclusion that the VE considered the medical reports and documents." *Id.* (quoting *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 540-41 (7th Cir. 1992)).

Here, the ALJ posed a hypothetical to the VE that required the VE to "assume an individual the claimant's age, education and work experience *who would be limited to sedentary work.*" R. at 65 (emphasis added). This hypothetical required the VE to consider a person who could sit for six hours in an eight hour work day, consistent with the definition of sedentary work. The ALJ did not pose a hypothetical taking account of a limitation to sitting for less than six hours.

Although the VE testified that she reviewed the file and was present throughout the hearing, because the ALJ posed a hypothetical limiting Plaintiff to sedentary work, the Court cannot assume that the VE accounted for the sitting limitation of less than six hours in determining the type of jobs that Plaintiff could perform.

Because the Court has determined that Plaintiff's RFC must be reconsidered, the Court will also remand for the ALJ to repose the hypothetical, taking account of all of Plaintiff's limitations, to the VE.

### D. Remedy

Finally, Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor*, 425 F.3d at 356. This is not such a case. Here, the ALJ's opinion was not supported by substantial evidence because she failed to develop the record, leaving several issues unresolved, including whether Plaintiff's RFC finding was supported by substantial evidence. Further, although Plaintiff requests an award of benefits, Plaintiff fails to present an argument in favor of doing so.

Because unresolved issues exist regarding Plaintiff's credibility, the ALJ's RFC finding, and the hypothetical posed to the VE, these are all issues that can only be resolved through further

proceedings on remand. Accordingly, this matter is remanded for further proceedings.

**CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ failed to create an accurate and logical bridge between the evidence of record and her credibility finding, about Plaintiff's RFC, and posed an incomplete hypothetical to the VE. Therefore, the Court **GRANTS** the Plaintiff's Motion for Summary Judgment [DE 15] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 30th day of November, 2009.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record